IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TICORA WILLIAMS,

                Plaintiff,

v.

WAL-MART STORES EAST, LP,

                Defendant.

_____/

Civil Action File No.
1:11-cv-03712-RLV

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER

COMES NOW Defendant Wal-Mart Stores East, LP (hereinafter "Defendant"), and pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, hereby moves this Court for an Order to Protect and to Limit the Plaintiff's Notice of Inspection of the subject Wal-Mart store on April 13, 2012, and to protect Wal-Mart from producing original claim forms or folders from other similar incidents at Defendant's store.

### I.  INTRODUCTION

This is a slip-and-fall premises liability matter.  Plaintiff Ticora Williams slipped and fell on an allegedly wet floor between the cash registers at the Wal-Mart store number 3401 in College Park, Georgia on September 23, 2010 at about 5:10 p.m.  In discovery, Defendant produced video footage from the store from the date

of the incident pursuant to a Consent Protective Order.  One video clip in particular is an hour and a half long, and  clearly shows the employees who were in the area before and after the alleged incident.

## A.    The Plaintiff's Notice of Inspection

On March 14, 2012, Plaintiff filed a Notice of Inspection of the premises.  A copy of the inspection is attached hereto as Exhibit "A".  According to the Notice, Plaintiff Williams intends to do the following at the subject store:

> (1)    The Plaintiff's counsel will enter the premises on April 13, 201 for the purpose of "*inspecting, measuring, photographing, <u>and any other examination</u> allowed by the Federal Rule of Civil Procedure 34(a)(2) of the aisle and surrounding areas where Plaintiff slipped and fell on September 23, 2010, and as more fully described in Plaintiff's Complaint and by the witnesses who have given deposition testimony*."
> (Exhibit "A") (emphasis added).

As set forth more fully, herein, Defendant objects to the above-referenced language of the Notice of Inspection and moves for protection as the request, as worded, is overly broad, vague, unduly burdensome, seeks information that is not relevant nor reasonably calculated to lead to the discovery of relevant evidence, and

fails to conform to Federal Rule of Civil Procedure 34. Under Fed. R. Civ. P. 34(b), the notice must "describe with reasonable particularity each item or category of items to be inspected."

> (2)   Thereafter, Plaintiff's attorney intends to "inspect the surveillance video monitor(s) of the Asset Protection Office "*at Defendant's store, including the screen shots for the surveillance cameras in and around the area where Plaintiff slipped and fell on September 23, 2010"*.

As set forth more fully, herein, Defendant strongly opposes an inspection of its Asset Protection control room on April 13, 2010, and has opposed the inspection ever since the topic of this inspection was ever mentioned informally between counsel. Defendant seeks protection concerning said inspection because less intrusive means exist for Plaintiff to obtain the requested information other than an inspection of the store's Asset Protection office.  Defendant has offered to produce "still shots" from other cameras located around the area where the Plaintiff fell after the inspection, and Defendant has also offered to make an employee available for a deposition concerning the "still shots" produced.

**B.    The Plaintiff's Second Request for Production of Documents to be produced at the Inspection**

In Plaintiff's Second Request for Production of Documents to Defendant, served March 14, 2012, Plaintiff has also requested that Defendant comply with the three enumerated document requests by "permitting counsel for Plaintiff to inspect the original of each and every responsive document during the inspection of Defendant's premises scheduled for April 13, 2012". A copy of the Plaintiff's Second Request for Production of Documents is attached hereto as Exhibit "B".

As to Plaintiff's Request No. 1, Defendant has produced the original store file for the incident in question for Plaintiff's counsel's review on April 12, 2012. Thus, Defendant has complied with this request. Additionally, Defendant will agree to produce, after the inspection, color copies of screen shot stills from the surveillance camera located in or near the area where the Plaintiff slipped and fell on September 23, 2010.

However, Defendant will not agree to the production of documents in response to Plaintiff's Second Request, No. 2, and Defendant seeks protection from said request. (See Exhibit "B", No. 2). In the request, Plaintiff seeks to "inspect and copy the original CMI claim forms for all other similar incident at Defendant's store as identified in the General Liability Slip and Fall Incidents Table marked as Exhibit 19 to the deposition of William Brock."

In discovery, Defendants produced a "claims run" table for prior slip and fall incidents in the subject store's checkout area for three years prior to Plaintiff's incident.  In the claims run, there were nine prior slip-and-fall incidents in the checkout section of the College Park Wal-Mart store for three years prior to the incident.  Defendant has previously advised the Plaintiff that the original store files for the prior incidents date are not located at the subject store, are maintained at an off-site location, and are not easily accessible.  The store only holds claim files on the premises for the last two years.

Thus, Defendant seeks protection from the Court from having to respond any further to Plaintiff Second Request for Production of Documents No. 2 because the information requested is unduly burdensome, seeks personal and confidential information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; seeks privileged and protected work product documents; seeks attorney/client communications, attorney work product and/or information prepared in anticipation of litigation; seeks information concerning workers' compensation matters and other non-related matters; and seeks information concerning incidents and transactions involving third-persons who are in no way connected to the subject litigation.

Defendant will agree to produce the store incident reports corresponding to the nine prior incidents.  However, Defendant seeks protection from having to produce the original claims files corresponding to the prior incidents because the files include confidential information, including but not limited to personal and private contact information for the prior claimants listed in the store reports, as set forth more fully, herein.

## II.  ARGUMENT AND CITATION OF AUTHORITY

A request for inspection under Federal Rule of Civil Procedure 34(a)(2) is subject to the limits of Rule 26(b)(2)(c), which provides in part that the Court must limit the discovery of otherwise discoverable information when "the burden or expense of the proposed discovery outweighs its likely benefit."  Rule 26(c) of the Federal Rules of Civil Procedure provides that the Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, undue burden or expense.

Defendant Wal-Mart shows the Court that the requisite "good cause" for a protective order exists in this case in relation to Plaintiff's Notice of Inspection of the premises and as to Plaintiff's Second Request for Production of Documents, particularly as to No. 2.  Plaintiff has asked for virtually unfettered access to Wal-

Mart's Asset Protection office at the College Park store. As explained, *infra*, Wal-Mart shows that there are less intrusive and less burdensome means to obtain the information sought by Plaintiff. See Polo Realty, Inc v. Kruse, Inc., No. 1:10-cv-144 (N.D. Ind. 2010), *available at* 2010 WL 1948301.

## A.    Defendant seeks protection from an inspection of its Asset Protection control room

Defendant has agreed to a site inspection of the area where the fall occurred, and the parties have entered into an Inspection Agreement to outline the terms of the inspection. Additionally, Defendant has made the original store file for Plaintiff Ticora Williams's incident available for inspection by the Plaintiff.

However, Defendant will not agree to an inspection of the store's Asset Protection Office. Where a responding party exercises its right under Rule 26(c) and objects to a Rule 34 inspection, the Court should balance the parties' conflicting interests. See Belcher v. Bassett Furniture Indus. Inc., 588 F.2d 904, 908 (4 th Cir. 1978) (where entry on land is sought, the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens or dangers created by the inspection); see also Polo Realty, Inc v. Kruse, Inc., No. 1:10-cv-144 (N.D. Ind. 2010), *available at* 2010 WL 1948301. In Polo Realty, the district court

denied the plaintiff's motion for immediate inspection of defendant's property and documents.  The court found that the inspection would be "highly disruptive" to the defendants, and had the potential of harming innocent third parties. 2010 WL 1948301*1-2.  In denying the plaintiff's motion for inspection, the court also noted that "it would appear that there are alternative and reasonably adequate means for security the information sought by the plaintiff."

In this case, the Plaintiff's inspection of the Asset Protection Office would result in burden, potential danger, and harm to Wal-Mart and to non-parties who have nothing to do with this lawsuit.  The Asset Protection Office is the surveillance operation control room at the subject Wal-Mart store. Due to the sensitive, confidential, and proprietary nature of security/surveillance operations, the surveillance operation control room is not only "off limits" for members of the general public, but also for Wal-Mart employees not directly involved in asset protection.  This office is the location for ongoing investigations into internal theft and monetary losses for the store; for investigations into criminal acts on the property, including those involving minors; and for investigations into incidents involving other customers and individuals who have nothing to do with the incident in question. Defendant Wal-Mart works hard to maintain the privacy and confidentiality of its

Asset Protection office.

Plaintiff's request for an inspection of the surveillance operation control room is not reasonably calculated to lead to the discovery of admissible evidence, and the denial of Defendant's motion for protective order would result in the potential compromise of confidential proprietary practices and information of Wal-Mart. Plaintiff's requested inspection for the "Asset Protection" room would serve no legitimate purpose in aid of discovery, as nothing in the "Asset Protection" room is relevant to the events which took place on the date of the incident.  Furthermore, allowing Plaintiff to access the "Asset Protection" room for any purpose, including an inspection of the cameras and camera system, will necessarily involve a compromise of Defendant Wal-Mart's proprietary trade secrets pertaining to its surveillance operations.  See Salsbury Laboratories, Inc. V. Merieux Laboratories, Inc., 908 F.2d 706, 710 (1990), citing Thomas v. Best Manufacturing Corp., 234 Ga. 787, 789, 218 S.E.2d 68, 71 (1975) (under Georgia law, "a trade secret...can be protected by injunction, is a plan process, tool, mechanism, or compound, known only to its owner and those of his employees to whom it must be confided in order to apply it to the intended uses").

In this case, Plaintiff's inspection of the "Asset Protection" room could only

be considered a "fishing expedition," as there would be relevant for Plaintiff to learn relevant to this case from such access or inspection.  However, Defendant has a great deal of concern in connection with granting such access to Plaintiff and her counsel. Dissemination of smart phone photographs or video of the asset protection room, or information concerning its configuration or contents, would deprive Wal-Mart of the competitive advantage it enjoys over its competitors in the important realm of asset protection.

Importantly, less intrusive means exist for Plaintiff to obtain the requested information other than an inspection of the store's Asset Protection office.  Again, Defendant has produced a video of the incident in question subject to a consent protective order.  In response to Plaintiff's Notice of Inspection and document request, Defendant has also offered to produce "still shots" from other cameras located around the area where the Plaintiff fell after the store inspection.  Defendant has also offered to make an employee available for a deposition concerning the "still shots" produced in order to provide any "authentication" testimony for the still shots from the subject store.

In balancing the parties' conflicting interests for the inspection of the Asset Protection office, any alleged "search for truth" by the Plaintiff is clearly outweighed

by the danger and burden to Wal-Mart, and less intrusive means exist to produce the requested information to Plaintiff.  Accordingly, good cause exists for a protective order preventing Plaintiff from entering the Wal-Mart Asset Protection office on April 13, 2012.

**B.      Wal-Mart seeks protection as to Plaintiff's Second Request for Production, No. 2 and Inspection of Original Store Files for _prior_ incidents**

Defendant will not agree to an inspection of the original store files for the prior incidents, and submits that a protective order is proper.  At issue is Plaintiff's request to "inspect and copy the original CMI claim forms for all other similar incident at Defendant's store as identified in the General Liability Slip and Fall Incidents Table marked as Exhibit 19 to the deposition of William Brock."

Under Rule 26, the scope and use of discovery is within the discretion of the district court.  4A J. Moore, Federal Practice, ¶33.02, at pp. 33-18 (2d ed. 1981), and in the exercise of that discretion, "caution must be exercised to assure that discovery techniques are not made instruments of oppression." Priest v. Rotary, 98 F.R.D. 755, 761 (D.C. Cal. 1983).  When a discovery requests approaches the outer bounds of relevance and the information requested may only marginally enhance the objectives of providing information to the parties or narrowing the issue, the Court must then

weigh that request with the hardship to the part from whom the discovery is sought. Priest, 98 F.R.D. at 761.

Here, the discovery at issue exceeds the outer bounds of relevancy, and Defendant objects to producing the files and moves for protection.  The requested files likely contain privileged and protected work product documents; attorney/client communications, attorney work product and/or information prepared in anticipation of litigation;  information concerning workers' compensation matters and other non-related matters; and information concerning incidents and transactions involving third-persons who are in no way connected to the subject litigation.  There can be no doubt that the prior incident files contain personal and private contact information of prior claimants, which information is not relevant nor reasonably calculated to lead to the discovery of relevant evidence as to any issue in this litigation.  The prior claimants are not parties to the lawsuit, have not given Wal-Mart permission to identify them in this litigation, and they have a right to privacy. See, e.g., Dikeman v. Mary A. Stearns, P.C., 253 Ga. App. 646, 560 S.E.2d 115 (2002); see Lightsey v. Potter, 2006 WL 2938715 (N.D. Ga. 2006).

For instance, Wal-Mart is concerned that producing personal contact information of prior claimants could lead to violations of HIPAA.  Further, imagine

the loss of goodwill, reputation, and credibility for Wal-Mart if its customers learned that just because they had an accident at a store, their personal contact information could later be exposed and produced to strangers three years later in a lawsuit having nothing to do with them!  The discoverability of any personal and private contact information on former claimants and former customers of Wal-Mart is clearly outweighed by the competing interests of Defendant and the non-parties concerning the privacy of their personal information.

Additionally, Defendant has previously advised the Plaintiff that the original store files for the prior incidents are not located at the subject store, are maintained at an off-site location, and are not easily accessible.  The store only holds claim files on the premises for the last two years.

Again, there are less intrusive, less onerous, and less abusive means for Plaintiff to glean the requested information.  Defendant will agree to produce the store incident reports corresponding to the nine prior incidents.  However, Defendant seeks protection from having to produce the original claims files corresponding to the prior incidents because the files include confidential information, including but not limited to personal and private contact information for the prior claimants listed in the store files who have who have nothing to do with this lawsuit.

WHEREFORE Defendant hereby moves this Court, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure for a Protective Order (1) to prevent the Plaintiff from examining the Asset Protection Office at the subject Wal-Mart store, and limiting the inspection of the store to the area of the Plaintiff's fall, and (2) to protect Wal-Mart from producing original claim forms or folders from other similar incidents at Defendant's store.

This the 12th day of April, 2012.

McLAIN & MERRITT, P.C.

  /s/ Albert J. DeCusati
Albert J. DeCusati
Georgia Bar Number 215610
Attorney for Defendant

3445 Peachtree Road, N.E.
Suite 500
Atlanta GA  30326-1276
(404) 266-9171

Pursuant to Local Rules, counsel for Defendant certifies that the document has been prepared in Times New Roman, 14 point font, and that the document does not contain more than 10 characters per inch of type.