IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TICORA WILLIAMS, | Civil Action File No. 1:11-cv-03712-RLV |
| Plaintiff, | |
| v. | |
| WAL-MART STORES EAST, LP, | |
| Defendant. | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR MEDICAL EXAMINATION**

COMES NOW Plaintiff, by and through counsel, and hereby files her Brief in Opposition to Defendant's Motion for Medical Examination, showing this Court as follows:

**PRELIMINARY STATEMENT**

This is a premises liability case arising out of a slip and fall in mop water at Defendant's store on September 23, 2010.  After she fell, Plaintiff Ticora Williams immediately experienced severe pain in her right shoulder, neck, and back. Several Wal-Mart employees have testified that while Plaintiff was on the floor waiting for the ambulance to arrive she was crying and appeared to be in pain, clutching her right shoulder.  Mrs. Williams was rushed from the scene by ambulance to South Fulton Medical Center, and her treating doctors later

diagnosed her with multi-level disc bulges and an annular tear in her lower back and a full-thickness tear of the anterior portion of the supraspinatus tendon at its humeral attachment in her right shoulder.  Although her spinal pathology has thus far been treated conservatively, her shoulder required surgical intervention in the form of a right shoulder arthroscopic subacromial decompression, rotator cuff repair, labral debridement and synovectomy and biceps tenodesis.  To date, Mrs. Williams' medical bills exceed $115,000.00.

There can be no legitimate dispute about the nature and extent of Plaintiff's injuries.  Yet Defendant now asks this Court to allow its own paid expert, Dr. Bennett Axelrod, whom Defendant never identified as an expert in its Initial Disclosures [Doc. 7], Supplemental Initial Disclosures [Doc. 15], or discovery responses, to examine Plaintiff outside of the formal discovery period in hopes of obtaining favorable testimony regarding medical causation.[1]  Defendant has not met its burden of showing "good cause" for its requested medical evaluation, and its dilatoriness in seeking this medical evaluation outside the discovery period should not be condoned.  For the reasons discussed more fully below, Plaintiff respectfully requests this Court to deny Defendant's Motion.

---

[1] Defendant has also not complied with Federal Rule of Civil Procedure 26 (a) (2) (B) in failing to provide a Rule 26 Report for Dr. Axelrod.

## FACTUAL BACKGROUND

In her Initial Disclosures, Plaintiff identified her treating doctors as persons who might be called to offer expert medical opinion testimony and also produced copies of all of her medical records for treatment related to her slip-and-fall incident on September 23, 2010, at Defendant's store. [Doc. 12 and Doc. 12-1]. Plaintiff went a step further and identified Shevin Pollydore, M.D. and Obinwanne Ugwonali, M.D. by way of a formal pleading on January 17, 2012. [Doc. 25]. Defendant separately requested all of Plaintiff's medical records directly from her medical providers through Subpoenas for the Production of Documents to Non-Parties. [Docs. 19, 22, and 46]. Defendant also elected to depose Plaintiff's treating physicians with Dr. Pollydore sitting for a deposition on March 8, 2012 [Doc. 29], and Dr. Ugwonali being deposed on April 30, 2012. [Doc. 41].

Both Dr. Pollydore and Dr. Ugwonali, each of whom is highly-credentialed and board certified in their respective specialties, have opined that the slip-and-fall incident caused Mrs. Williams' injuries and subsequent need for medical treatment, including her right shoulder surgery. Their opinions are based on their education, training, and experience, as well as the treatment they provided to Mrs. Williams. Consequently, Defendant's request for its own medical evaluation with its hired expert, Dr. Bennett Axelrod, will unnecessarily delay this case by further

prolonging discovery and postponing the trial of this case. Defendant has never identified Dr. Axelrod as an expert witness, never provided a Rule 26 Report for him, and is requesting a Rule 35 examination at this late juncture solely to mitigate the opinions Dr. Pollydore and Dr. Ugwonali expressed as to the cause of Mrs. Williams' injuries. Because Defendant's Motion is untimely and because Defendant has failed to meet its burden under Federal Rule of Civil Procedure 35, its Motion should be denied.

## ARGUMENT/CITATION OF AUTHORITIES

**1.  DEFENDANT HAS FAILED TO MEET ITS BURDEN OF SHOWING "GOOD CAUSE" EXISTS FOR ITS REQUESTED EXAMINATION.**

Federal Rule of Civil Procedure 35 provides, in pertinent part, "The court where the action is pending may order a party whose . . . physical condition . . . is in controversy to submit to a physical . . . examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35 (a) (1). The Rule further provides that the Court's order "may be made <u>only on motion for good cause</u> and on notice to all parties and the person to be examined; and must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35 (a) (2) (A) and (B). Importantly, courts have recognized that the "good cause" requirement means more than simply showing relevance:

> The specific requirement of good cause would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by Rule 26 (b).  Thus, by adding the words 'showing good cause therefor,' the Rules indicate that there <u>must be greater showing of need</u> under Rules 34 and 35 than under the other discovery rules.

*Guilford Nat'l Bank of Greensboro v. S. Ry. Co.*, 297 F.2d 921, 924 (4th Cir. 1962) (emphasis added).  While federal law controls whether to allow a Rule 35 examination in a diversity case, at least one district court has recognized the value of state law when applying the federal rule.  *See Vopelak v. Williams*, 1967 U.S. Dist. LEXIS 11717 at *4 (N.D. Ohio 1967) ("Rule 35 was adopted to conform the federal practice to the state practice. . . .  Therefore, state decisions as well as federal can be helpful in applying the federal rule.") (internal citation omitted).[2] Ultimately, the decision to deny or allow a Rule 35 examination falls soundly within the discretion of the trial court.  *Coca-Cola Bottling Co. v. Torres*, 255 F.2d

---

[2] The language of O.C.G.A. § 9-11-35(a) and Rule 35 are nearly identical.  It provides as follows:

> When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical examination by a physician or to submit to a mental examination by a physician or a licensed psychologist or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

149, 153 (1st Cir. 1958). In fact, even when the "good cause" and "in controversy" requirements are met the trial court retains discretion as to whether to allow or deny the requested examination. *Hardy v. Riser*, 309 F. Supp 1234, 1241 (N.D. Miss. 1970).

In almost every personal injury case where liability and/or damages are disputed, a plaintiff's physical condition is necessarily "at issue." Thus, if a defendant was permitted to request a physical examination with its own doctor simply because it disputes the extent of a plaintiff's injuries such examinations would be the norm in every personal injury case. This is not the rule under federal or Georgia law.

In *Prevost v. Taylor*, the Georgia Court of Appeals affirmed the trial court's denial of the defendant's motion for a Rule 35 examination. 196 Ga. App. 368, 368 (1990) *overruled in part on other grounds in Johnson v. Riverdale Anesthesia Assocs., P.C.*, 275 Ga. 240, 242 (2002). There, the trial court denied the defense's motion in part after finding that the information sought could be obtained by other available sources, including the fact that all medical records for the treatment the plaintiff received were available to the defendant. *Id.*

In *Shumaker v. West*, the trial court found good cause lacking where the defense sought a Rule 35 examination of the plaintiff to assess her claimed PTSD.

2000 U.S. Dist. LEXIS 19759 at *9 (S.D. W. Va. 2000).  There, the defense had failed to include his proposed expert's Rule 26 Report with his expert disclosures and only sought the Rule 35 examination days before his expert disclosures were due.  *Id.* at *7.  Although these reasons were one basis for denying the Rule 35 examination, the trial court also found that the defendant had failed to show good cause because there was already ample medical evidence relating to the plaintiff's PTSD.  *Id.* at *9.  In making its ruling, the court noted that the defense had already been provided a number of tests and other information supporting the PTSD diagnosis.  *Id.* at *9-10 *citing Acosta v. Tenneco Oil Co.*, 913 F.2d 205, 209 (5th Cir. 1990) (denying request for examination for lack of good cause where the defendant already possessed the information it sought) and *Stanislawski v. Upper River Servs., Inc.*, 134 F.R.D. 260, 262 (D. Minn. 1991) (denying request for examination for no good cause shown where defendant had been given access to all of plaintiff's medical records, had deposed plaintiff, and been provided other pertinent information about plaintiff).

Similarly, in *Storms v. Lowe's Home Centers, Incorporated*, the trial court denied the defense's request for a Rule 35 examination in part because of a lack of showing good cause.  2002 U.S. Dist. LEXIS 23038 at *7 (W.D. Va. 2002).  In denying the request, the trial court noted that the plaintiff had provided the

defendant with a copy of all his medical records, a report from his own expert, and other discoverable material requested by the defendant. *Id.* The trial court also noted that the defense would be taking the plaintiff's deposition shortly thereafter and could thoroughly examine the plaintiff at that time. *Id.*

Just like the defendants in *Prevost*, *Shumaker*, *Storms*, *Acosta*, and *Stanislawski*, and as discussed below, here Defendant Wal-Mart is already in possession of the same information it seeks from the Rule 35 examination. Defendant has in its possession all of Plaintiff's medical records from this incident both through Plaintiff's own discovery responses and Defendant's own non-party document requests to each of her medical providers. Plaintiff has given her own deposition, and the defense took discovery depositions of Drs. Pollydore and Ugwonali, both treating physicians who are expected to testify at trial and whose records have previously been produced.

Defendant has failed to show good cause for a Rule 35 examination, especially at this late stage of these proceedings. Respectfully, Defendant's request should be denied.

## 2. DEFENDANT'S MOTION IS UNTIMELY AND WILL DELAY TRIAL AND THE INFORMATION SOUGHT IS AVAILABLE THROUGH OTHER MEANS.

In addition, Defendant's Motion for a Rule 35 examination is untimely and will delay trial of this case.[3]  Georgia courts have recognized several factors for the trial court to consider in ruling on a motion for a Rule 35 examination, including (1) the ability of the movant to obtain the desired information by other means and (2) the timeliness of the events leading up to the Motion. *Metr. Life Ins. Co. v. Lehmann*, 125 Ga. App. 539, 540 (1972) ("A relevant factor in this determination is the ability of the movant to obtain the desired information by other means. . . . Another factor would be the timeliness of the motion and the events leading up to it.") (internal citations omitted).

### A.   The Motion is Untimely.

In this case, the parties conducted their Early Planning Conference on November 9, 2011, and timely submitted their Joint Preliminary Report and Scheduling Order on November 22, 2011.  [Doc. 9].  Nowhere in the Joint Preliminary Report and Scheduling Order did Defendant mention that it might later request Plaintiff to undergo a Rule 35 examination.  [*See* Doc. 9].  The Court's Scheduling Order states unequivocally that all motions except for *Daubert* motions

---

[3] In accordance with Local Rule 16.4, the parties' Consolidated Pretrial Order is due on or before Monday, June 4, 2012.

and Motions for Summary Judgment must be filed within 30 days of the beginning of discovery, <u>unless</u> the filing party has obtained the permission of the court to file later. [Doc. 14, pg. 5]. Significantly, Defendant <u>never</u> even identified Dr. Bennett Axelrod as an expert witness who may be called to testify as an expert pursuant to Federal Rule of Evidence 702, nor has Defendant provided a Rule 26 Report as required by Federal Rule of Civil Procedure 26(a)(2)(B). [*See* Docs. 7 and 15].

The parties conducted discovery on a four-month discovery track, which this Court later agreed to extend by forty five (45) days to May 5, 2012. [Doc. 34]. Defendant deposed Dr. Pollydore on March 8, 2012, and then waited seven (7) weeks to file the instant Motion, which was submitted just <u>four</u> (4) days before the close of the extended discovery period. Notably absent from Defendant's Brief is any explanation or excuse for why it waited until the eleventh hour to move this Court for a Rule 35 examination, why it never identified Dr. Axelrod as its expert, or why it has neglected to comply with Rule 26 and provide an expert report for him. Without question, Defendant's non-compliance with the rules and overall dilatoriness weighs in favor of denying its Motion.

Additionally, if this Court were to grant Defendant's Motion it would further delay the trial of this case. First, the parties would need to schedule an appointment for Plaintiff, a single mother who works a full-time job and lives in

College Park, which is forty five (45) miles away from Dr. Axelrod's office in Suwanee. After Dr. Axelrod generates his office note from the evaluation of the Plaintiff, which she anticipates will be favorable to the defense as it relates to causation, the Plaintiff would need to send document requests to Dr. Axelrod and also depose him about his qualifications, the bases for his opinions, explore his biases and litigation history, and the opinions that he would seek to offer at trial. Given both the doctor's and opposing counsel's busy schedules, it is highly likely that Dr. Axelrod's discovery deposition would postpone this case by at least another two or three months, assuming he were to respond timely and completely to Plaintiff's discovery requests. As the discovery period has now come and gone, this would all take place outside the formal discovery period.

### B.    The Information Sought is Available Through Other Means.

As discussed above, the information about Plaintiff's medical treatment and conditions are both available through other means. Plaintiff has produced copies of her medical records during discovery, and Defendant has separately requested its own copies of these records through numerous non-party document requests to the medical providers themselves. Defendant has also taken the discovery depositions of Plaintiff and both Dr. Ugwonali and Dr. Pollydore.

Given the untimeliness of Defendant's Motion, the likelihood that it will needlessly delay the trial of this case by several months, and the availability of the information by other means, Plaintiff asks that it be denied.

**3.   THE PLAINTIFF'S TREATING PHYSICIANS ARE INDEPENDENT DOCTORS WITH NO INTEREST IN THE OUTCOME OF THIS CASE.**

In its Motion, Defendant mischaracterizes Dr. Pollydore's relationship with ML Healthcare in an apparent attempt to suggest his causation opinions are the result of bias.  On the one hand, Defendant contends that Dr. Pollydore will not be paid for his treatment if he fails to relate Plaintiff's injuries to the incident at Defendant's store (Def.'s Brief, pp. 5-6), yet elsewhere states that Dr. Pollydore was paid $6,035.60 for care he provided Mrs. Williams.  (Def.'s Brief, p. 5). Despite Defendant's attempts to portray ML Healthcare as a nefarious entity, the simple fact of the matter is that like any other private health insurance provider, ML Healthcare pays medical providers to treat uninsured or underinsured plaintiffs.  ML Healthcare is no different than Humana, BlueCross/BlueShield, UnitedHealthcare or any other private insurer that has agreements with various medical providers to treat patients.  Importantly, would-be plaintiffs remain responsible for repaying ML Healthcare <u>whether or not they prevail in the underlying litigation</u>.

More importantly, because the medical providers in this case have already been paid for the medical services they rendered to Mrs. Williams, Defendant's suggestion that they are biased or have an incentive to give self-serving causation testimony simply ignores reality. Neither Dr. Pollydore nor Dr. Ugwonali have any financial interest in this case, and Defendant's allegations to the contrary are incorrect.

It is noteworthy that Defendant alleges that Dr. Pollydore's opinions are suspect because he got paid for the treatment and care he provided, yet its own doctor, Bennett Axelrod, who has been retained not to treat Mrs. Williams' injuries but solely to offer causation opinion testimony favorable to Defendant Wal-Mart, is not biased. In reality, Dr. Axelrod is nothing more than a hired gun who is a favorite witness of the defense bar. It should also be mentioned that Dr. Axelrod's office is at least 45 miles one-way from Plaintiff's home in College Park. Certainly if Defendant was really seeking a second opinion from an "independent" doctor it could surely find one nearer to where Plaintiff lives.

## **CONCLUSION**

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant's Motion as untimely and for failing to meet its burden of showing good

cause for the requested examination. A proposed Order is attached hereto as Exhibit "A" and filed contemporaneously herewith.

This 16th day of May, 2012.

            Respectfully submitted,

            **CASH, KRUGLER & FREDERICKS, LLC**

            /s/ James A. Robson
            Andrew B. Cash
            Georgia Bar Number 743459
            James A. Robson
            Georgia Bar Number 551053

5447 Roswell Road, N.E.
Atlanta, Georgia 30342
(404) 659-1710
acash@ckandf.com
jrobson@ckandf.com
**Counsel for Plaintiff**

## Local Rule 5.1 and 7.1 Certification

Pursuant to Local Rules 5.1 and 7.1, counsel for the Plaintiff certifies that the document has been prepared in Times New Roman, 14-point font, and that the document does not contain more than 10 characters per inch of type.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR MEDICAL EXAMINATION** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to attorneys of record:

Albert J. DeCusati, Esq.
Ashley A. Bagiatis, Esq.
3445 Peachtree Road, N.E., Suite 500
Atlanta, Georgia 30326
T: (404) 365-4512
F: (404) 364-3138
adecusati@mclain-merritt.com
ashley.bagiatis@mclain-merritt.com

This 16th day of May, 2012.

                          **CASH, KRUGLER & FREDERICKS, LLC**

                          /s/ James A. Robson
                          Andrew B. Cash
                          Georgia Bar Number 743459
                          James A. Robson
                          Georgia Bar Number 551053

5447 Roswell Road, N.E.
Atlanta, Georgia 30342
(404) 659-1710
acash@ckandf.com
jrobson@ckandf.com
**Counsel for Plaintiff**