IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TICORA WILLIAMS,                          Civil Action File No.
                                          1:11-cv-03712-RLV

        Plaintiff,

v.

WAL-MART STORES EAST, LP,

        Defendant.

_____/

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER

COMES NOW Defendant Wal-Mart Stores East, LP (hereinafter "Defendant"), and pursuant to Local Rules and Federal Rule of Civil Procedure 26(c), hereby files this Reply brief in support of its Motion for an Order to Protect and to Limit the Plaintiff's Notice of Inspection of the subject Wal-Mart store on April 13, 2012, and to protect Wal-Mart from producing original claim forms or folders from other similar incidents at Defendant's store, for the following reasons:

•      It is undisputed that the site inspection for the College Park Wal-Mart store went forward on April 13, 2012 pursuant to an Inspection Agreement outlining the terms of the inspection. Defendant did not agree to the inspection of the store's Asset Protection Office, and filed

the instant Motion for Protective Order regarding the same.  Since the filing of its Motion for Protective Order, Defendant has continued to diligently work to produce information to Plaintiff as a compromise to an inspection of the Asset Protection control room.  Defendant seeks a Protective Order denying Plaintiff's request for inspection of its Asset Protection control room, and from having to respond any further to Plaintiff's notice of inspection;

• Defendant Wal-Mart respectfully reiterates that a protective order is warranted as to Plaintiff's Second Request for Production, No. 2 and Inspection of Original Store Files for <u>nine prior</u> incidents dating back to 2007.  The files contain confidential information, including but not limited to personal and private contact information for the prior claimants listed in the store reports, and less intrusive, less onerous, and less abusive means exist for Plaintiff to glean the requested information.  As a compromise to Plaintiff's onerous request, Defendant has recently produce the store incident reports corresponding to the nine prior incidents.  Defendant moves for protection from having to respond any further to this request.

## Procedural Posture

On April 13, 2012, a site inspection of the subject Wal-Mart store went forward by agreement of counsel and pursuant to an Inspection Agreement.

As a compromise to the Plaintiff's request to inspect the store's Asset Protection Office, Defendant produced "still shots" from eight (8) additional cameras in the adjacent area to where the incident occurred. These eight shots were requested by Plaintiff's counsel following the store inspection of April 13, 2012, and were produced on April 13, 2012 by Defendant. An exemplar of the "still shots" from the cameras in the adjacent area is attached as Exhibit "A".

As previously noted, Defendant agreed to make an employee available for a deposition concerning the "still shots" produced in order to provide any "authentication" testimony for the still shots from the subject store. On May 17, 2012, the 30(b)(6) deposition of Wal-Mart went forward. One of the topics included video surveillance footage in existence on September 23, 2010, through and including the present time. (See Docket No. 58). On May 18, 2012, the deposition of Ross Taylor will go forward. Mr. Taylor is the individual who pulled the video in question for Ms. Williams's fall. Defendant has also offered Mr. Taylor for a deposition in order to provide any "authentication" testimony for the still shots from the subject

store.  Such testimony will provide the necessary information and foundation for opposing to verify that the screen stills produced by Wal-Mart are consistent with the cameras at the store, thereby negating any need for an inspection of Wal-Mart's asset protection control room.

Additionally, each screen still produced by Defendant contains a reference to the name of the corresponding camera at the store.  As referenced on the exemplar still shot in Exhibit "A", the video  software is handled by "March Networks".  March Networks is a reputable third party vendor that specializes in video surveillance and video surveillance software.  As referenced in Exhibit "A", each "still shot" contains coded information from the March Networks program which identifies the source of the video footage by reference to the camera name.  For instance, the still shot in Exhibit "A" is from "Register 01" at the subject store.  Thus, the still shots are independently verified on their face.

Throughout this case, Defendant has continued to work with opposing counsel to resolve any discovery dispute in good faith, and has produced numerous documents and information to opposing counsel.  For instance, Defendant has produced the original store file for the incident in question to Plaintiff for inspection and copying on April 12, 2012; a copy of Defendant's Report of Customer Incident,

Customer Statement, Witness Statements, photographs, and video; and has produced a "claims run" for the subject store, pursuant to the Consent Protective Order.

Following the site inspection on April 13, 2012, Defendant notified Plaintiff's counsel that it would produce the camera schematic for the "pan tilt zoom" cameras at the store. Defendant also notified Plaintiff that producing the schematic would be difficult because it was a large, framed schematic at the store and thus, copying the schematic would be difficult. On May 17, 2012, Defendant made the schematic available for inspection by Plaintiff prior to the deposition of Wal-Mart. At the same time, Defendant also produced an enlarged portion of the schematic of the store showing the location of the cameras in the area in question. The video schematics were made available to Plaintiff prior to the start of the 30(b)(6) deposition on May 17, 2012, and were used by Plaintiff during the deposition.

On May 1, 2012, Defendant provided a Supplemental Response to Plaintiff's Second Request for Production of Documents, No. 2 by producing the nine (9) incident reports for the "other prior incidents" referenced in the "claims run" for the subject store, pursuant to the Consent Protective Order. The incident reports were produced as a compromise to Plaintiff's request to inspect the original claim folders for the nine prior incidents listed in the "claims run". As Defendant previously

advised Plaintiff, it has legitimate objections to producing the claims folders for the nine prior incidents, and the claims folders are not easily accessible.

Throughout the litigation, Defendant has worked in good faith in discovery at all times, but reiterates that a protective order remains warranted as to (1) an inspection of its Asset Protection control room; and (2) Plaintiff's request for the original claims files corresponding to the nine prior incidents at the store.

## Argument and Citation of Authority

Defendant reiterates that the requisite "good cause" for a Protective Order exists with respect to Plaintiff's Notice of Inspection of the premises and as to Plaintiff's Second Request for Production of Documents, particularly as to No. 2. Fed. R. Civ. P. 34(a)(2); Fed. R. Civ. P. 26(b)(2)(c).

**A.    Defendant seeks protection from <u>any</u> inspection of its Asset Protection control room**

Wal-Mart respectfully reiterates its request for a Protective Order as to Plaintiff's request for inspection of its Asset Protection control room, and from having to respond any further to Plaintiff's notice of inspection.

While the store inspection occurred on April 13, 2012 by agreement of counsel, Defendant shows that the issue is not moot.  Defendant reiterates that a Protective Order remains appropriate as to any future similar request by Plaintiff in this lawsuit, or any future motion to compel entry into the Asset Protection control room at the subject store pursuant to Plaintiff's Notice of Inspection.  In fact, Plaintiff's intention to revisit the Inspection issue in this litigation is apparent, based upon the language used in her proposed order that "[n]othing herein stated shall prelude Plaintiff from *re-serving Defendant with a Notice of Inspection at a later date should the need*

*arise*." (Emphasis added).

Plaintiff Williams admittedly made the request to inspect the Wal-Mart Asset Protection Control room in light of a recent State Court Judge's Order striking portions of Kroger's answer for spoliation of evidence[1].  However, the Kroger case is totally distinguishable from the instant matter, and fails to serve as mandatory or persuasive authority for this Court.  In the Kroger case,  the defendant's employee testified in his deposition that there was no video that would have captured the incident. During the deposition, which was located at the store, the defendant then allowed for an inspection of the store's video surveillance room.  The inspection revealed that there were cameras that would have captured the incident and thus, the state court judge found that destroyed Kroger destroyed evidence and acted in bad faith.

The Kroger matter has nothing to do with this case, and certainly does not provide support for Plaintiff's request to inspect Defendant's asset protection control room.  It is undisputed that Defendant has produced video of the alleged incident in question.  One video clip is an hour and a half long, and  clearly shows the employees

---

[1] Charles Craig Walters, Jr et al v. The Kroger Co., et al, Civil Action No. 2009C-14740-4, State Court of Gwinnett County, Georgia, referenced as Exhibit "A" in Plaintiff's Response brief.

who were in the area before, during, and after the alleged incident.  The video shows how and when the alleged hazard was created, and it shows activities of employees in the area prior to the incident.  The state court slip-and-fall case referenced by Plaintiff is totally inapplicable to the instant matter.

Defendant reiterates that a Protective Order remains appropriate as to Plaintiff's request to inspect the Asset Protection control room.  Even allowing Plaintiff's counsel the "opportunity to independently verify that the still screen photographs that Wal-Mart produced in discovery match-up with what is show on the monitor screen" would result in severe burden, potential danger, and harm to Wal-Mart and to non-parties who have nothing to do with this lawsuit.

Wal-Mart carefully guards  its Asset Protection control room.  It is off-limits to the public and to employees not involved in asset protection.  Allowing Plaintiff's counsel to even enter the Asset Protection control room and view any contents of the Asset Protection control room is unacceptable and worthy of protection.  The set-up of the control room is confidential, and the video equipment is confidential and proprietary.  Again, the control room is the location for ongoing investigations into internal theft and monetary losses for the store; for investigations into criminal acts on the property, including those involving minors; and for investigations into

incidents involving other customers and individuals who have nothing to do with the incident in question. Wal-Mart works hard to maintain the privacy and confidentiality of its Asset Protection control room.

Plaintiff's request for an inspection of the surveillance operation control room for any purpose– even an inspection of the video monitors – is not reasonably calculated to lead to the discovery of admissible evidence, and the denial of Defendant's motion for protective order would result in the potential compromise of confidential proprietary practices and information of Wal-Mart. Defendant reiterates that nothing in the "Asset Protection" room is relevant to the events which took place on the date of the incident.  Furthermore, allowing Plaintiff to access the "Asset Protection" room for any purpose, including an inspection of the cameras and camera system, will necessarily involve a compromise of Defendant Wal-Mart's proprietary trade secrets pertaining to its surveillance operations. See Salsbury Laboratories, Inc. V. Merieux Laboratories, Inc., 908 F.2d 706, 710 (1990).

Any alleged "search for truth" by the Plaintiff in requesting an inspection of the Asset Protection Office is clearly outweighed by the danger and burden to Wal-Mart and to non-parties who have nothing to do with this lawsuit, and less intrusive means exist to produce the requested information to Plaintiff.  Again, Defendant has

worked diligently in discovery to produce information to Plaintiff as a compromise to the Inspection of the Asset Protection control room, including the recent production of eight "still shots" from cameras located near the area where the incident occurred, as well as deposition testimony to verify that the still shots "match-up" with the cameras at the store.   As noted, thus, the still shots are independently verified on their face by reference to the exact camera name at the subject store. (See Exhibit "A").

This information and deposition testimony are all that should be required of Wal-Mart to produce in discovery, and Plaintiff should not be allowed to "independently verify" this information through an inspection of the Asset Protection control room.

**B.     A protective order remains warranted as to Plaintiff's Second Request for Production, No. 2 and Inspection of Original Store Files**

Contrary to Plaintiff's assertion, Defendant did not overstate the breadth and scope of Plaintiff's Request for Production of Documents, No. 2, and moved for protection for valid concerns.  Plaintiff's request asked,

> *Please permit Plaintiff to inspect and copy the original CMI claims forms for all other similar incidents at Defendant's store as identified in the General Liability Slip and Fall incidents Table marked as Exhibit 19 to the deposition of William Brock.*

As written and as reasonably interpreted by Defendant, Plaintiff's request for

"original CMI claims forms" includes store files as to the other prior incidents.  The request is certainly <u>not</u> limited to a request for a two-page report as Plaintiff now claims in her Response brief.

Further, it is apparent that Plaintiff has not clearly communicated the documents she seeks:

Plaintiff apparently references the two-page report in her Exhibit "B" as a "CMI claims form", and references the "store incident reports" as the one-page statement in Exhibit "D".

However, Defendant shows that the two page report attached as her Exhibit "B" is called an "incident report", <u>not</u> a "CMI claims form".  Additionally, Plaintiff's one-page statement attached as her Exhibit "D", is called a "customer statement" (as titled), not an "incident report."

Based upon Plaintiff's response brief, she is interested only in the two-page incident reports, which she calls "CMI claims forms".  As promised, Defendant produced redacted "incident reports" for the nine prior incidents on May 1, 2012 (which Plaintiff references as "CMI claims forms").  The incident reports provide all necessary information for Plaintiff to craft any argument of constructive knowledge based upon prior "substantially similar" incidents.  The reports describe the type of

flooring; the time of day; the description of the hazard; the description of the fall; and list the employees who responded to the scene.

However, it is clear that the prior incidents were <u>not</u> substantially similar to the incident in question.  An exemplar of the incident reports produced from the prior incidents is attached hereto as Exhibit "B".  As noted in Exhibit "B", the prior claimant was "walking fast to restroom and fell" on January 14, 2009 at 12:10 p.m.  The floor surface was described as "clean" and "dry", with "no trash or objects", and "no defects" found.  No ambulance was called for the prior claimant.  This incident report provides a stark contrast to Plaintiff Williams's incident report, attached to Plaintiff's Response brief at Exhibit "B".  As documented in Plaintiff's incident report, the description of the area in question was characterized as "just mopped floor", which is consistent with the facts known to date in this case.  Additionally, the floor was "not dry"; Plaintiff was reportedly "carrying bundles or objects", and was reportedly "wearing glasses."  In other words, a customer falling while walking fast to the restroom with no defect on the floor is not substantially similar to a slip-and-fall on "just mopped floor."

There should be nothing left for Defendant to produce with respect to Plaintiff's Request to Produce, No. 2.  Nevertheless, Defendant seeks protection from

having to produce any further documents in response to said request.  Defendant also seeks protection from producing any personal and private contact information of prior claimants, which information is not relevant nor reasonably calculated to lead to the discovery of relevant evidence as to any issue in this litigation.  As noted, the prior claimants are not parties to the lawsuit, have not given Wal-Mart permission to identify them in this litigation, and they have a right to privacy. <u>See, e.g.</u>, <u>Dikeman v. Mary A. Stearns, P.C.</u>, 253 Ga. App. 646, 560 S.E.2d 115 (2002); <u>see</u> <u>Lightsey v. Potter</u>, 2006 WL 2938715 (N.D. Ga. 2006).

Moreover, Defendant reiterates that producing un-redacted incident reports may violate HIPAA.  The incident reports contain fields requesting a claimant's name, date of birth, gender, and address.  Contrary to Plaintiff's assertion, the reports also request information on "Medical Provider Information", including "Medical Provider Name, address, and phone number"; requests whether an MD or hospital was involved; and whether a claimant was transported. Such information would be protected from disclosure by Wal-Mart under HIPAA.  The discoverability of any personal and private contact information on former claimants and former customers of Wal-Mart is clearly outweighed by the competing interests of Defendant and the non-parties concerning the privacy of their personal information

Again, Defendant has produced the store incident reports corresponding to the nine prior incidents.  However, Defendant seeks protection from having to produce the original claims files corresponding to the prior incidents; seeks protection from having to produce any further documents in response to Plaintiff's Request for Production of Documents, No. 2; and seeks protection from producing any personal and private contact information of prior claimants listed in the store files who have who have nothing to do with this lawsuit.

WHEREFORE Defendant respectfully reiterates its request for a Protective Order (1) to prevent <u>any</u> inspection of its Asset Protection control room at the subject Wal-Mart store; limiting the inspection of the store to the area of the Plaintiff's fall; and for protection from having to respond any further to Plaintiff's notice of inspection, and (2) to protect Wal-Mart from producing original claim forms or folders from other similar incidents at Defendant's store; and from producing any personal and private contact information of prior claimants listed in the store files.

A proposed order is attached for the Court's convenience.

- signature page follows -

This the 17th day of May, 2012.

McLAIN & MERRITT, P.C.

_/s/ Albert J. DeCusati_
Albert J. DeCusati
Georgia Bar Number 215610
Attorney for Defendant

3445 Peachtree Road, N.E.
Suite 500
Atlanta GA  30326-1276
(404) 266-9171

Pursuant to Local Rules, counsel for Defendant certifies that the document has been prepared in Times New Roman, 14 point font, and that the document does not contain more than 10 characters per inch of type.

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on May 17, 2012, I electronically filed **REPLY TO**

**DEFENDANT'S MOTION FOR PROTECTIVE ORDER** with the Clerk of Court

using the CM/ECF system which will automatically send email notification of such

filing to attorneys of record.

McLAIN & MERRITT, P.C.


  /s/ Albert J. DeCusati
Albert J. DeCusati
Georgia Bar No. 215610
Attorneys for Defendant

3445 Peachtree Road, N.E.
Suite 500
Atlanta, GA  30326
(404) 266-9171
(404) 364-3138 (fax)
adecusati@mclain-merritt.com